**John Thomas GARDNER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 778S129.

Supreme Court of Indiana.

April 30, 1979.

James R. Fleming, Howard County Public Defender, Kokomo, for appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

John Thomas Gardner, defendant, was tried to the court, without the intervention of a jury, and was found guilty of murder. He was sentenced to a determinate term of sixty years' imprisonment. He now appeals to this Court and raises the following issues for examination:

1. Did the trial court err in denying the defendant's motion to suppress?

2. Did the trial court err in overruling the defendant's objections to the admission of evidence found during a search of the defendant's automobile?

3. Did the trial court err in sentencing the defendant?

4. Were the defendant's constitutional rights violated by the court's use of information contained in the presentence investigation report?

Carla Mason was murdered on November 6, 1977. She had last been seen alive at Woody's Steak House in Miami County, Indiana, that evening. Testimony at trial disclosed that the defendant had also been at Woody's and that he had been seen leaving at approximately the same time that Mason left. Mason's body was found very early on November 10, 1977. Late that afternoon, in an area known to have been frequented by the defendant, clothing belonging to the victim was discovered. Other information

revealed that defendant's automobile had been observed on November 7, 1977, or November 8, 1977, in the general area where Mason's body was discovered.

Police questioned defendant at his mother's home on November 12, 1977. He was advised of his constitutional rights twice while at his mother's residence and he specifically waived those rights and also consented to a search of his automobile. The defendant was told repeatedly that he did not have to accompany the officers and that he was not under arrest. However, the defendant agreed to accompany the police to the Peru police station for the purpose of discussing the murder of Carla Mason. Moreover, the defendant indicated to the police that prior to their arrival he was preparing to turn himself in to the police. The defendant was again advised of his rights at the Peru police station, and he confessed to the murder. Thereafter, the defendant recounted for the police the route he had taken with the victim; he also located areas in which he had disposed of evidence of the crime. He was placed under arrest, and an information and affidavit for probable cause were filed with the Miami Circuit Court on November 14, 1977.

## I.

The defendant first argues that the trial court should have granted his motion to suppress because his confession was obtained in violation of his constitutional rights. He also asserts that he was illegally arrested. We can find no support for his position within the record.

■ The facts most favorable to the state show that the police questioned the defendant on November 12, 1977. Although certain circumstances and evidence had led the police to believe that the defendant was involved with the crime, they did not have probable cause to arrest him without further investigation. When the defendant was questioned, he was advised of his constitutional rights. He was told that he was not under arrest and that he

did not have to accompany the officers to the police station.[1] The defendant indicated that he was going to turn himself in anyway. He stated that he understood his rights; he read and signed a waiver of rights form. He was not questioned during the ride to the police station. It was only after he had once again been advised of his constitutional rights that the defendant confessed to the murder. The totality of the circumstances of the case demonstrates that the defendant voluntarily accompanied the officers to the police station and that there was no illegal detention. The court heard the evidence at the motion to suppress hearing and determined that the confession was given voluntarily, intelligently, and knowingly. *Franklin v. State,* (1977) 266 Ind. 540, 364 N.E.2d 1019; *Montes v. State,* (1975) 263 Ind. 390, 332 N.E.2d 786. Our scope of review on appeal is limited to a determination of whether the evidence was sufficient to support the trial court's ruling. *Martin v. State,* (1978) Ind., 372 N.E.2d 181; *Murphy v. State,* (1977) Ind., 369 N.E.2d 411. We find that the evidence was sufficient, and there was no trial court error.

■ The defendant postulates that the police really did have probable cause to secure a warrant for his arrest and that the failure of the police to do so rendered the subsequent arrest illegal. It is not necessary that we determine at this juncture whether or not probable cause for a warrant did exist because we have held that a police officer may arrest a suspect without a warrant when he has probable cause to believe that a felony has been committed by the person arrested. *Garr v. State,* (1974) 262 Ind. 134, 312 N.E.2d 70. Exhibits which the police obtained as a result of the defendant's confession were introduced at trial over the defendant's objections. However, the objections were made upon the same bases as expressed at the motion to suppress hearing. As we have discussed, the trial court did not err in denying the

---

1. The defendant was handcuffed briefly, but the officer in charge of the investigation ordered the handcuffs removed because the defendant was not under arrest.

motion to suppress. It follows that there was no error in the admission of the exhibits.

## II.

■ The police obtained no warrant before searching defendant's automobile. However, the record is clear that the defendant had been completely and specifically advised of his constitutional rights before he consented to the search. He was not subjected to threats, promises, or other undue influences. Taken in conjunction with the defendant's statement that he intended to turn himself over to law enforcement authorities, the defendant's consent to a search of his automobile must be deemed to be voluntary unless other circumstances are shown to exist. Viewing all the circumstances, we conclude that defendant voluntarily, intelligently, and knowingly consented to the search. *Winston v. State*, (1975) 263 Ind. 8, 323 N.E.2d 228. Additionally, the defendant's consent eliminates any necessity for our discussing the need for or the ability to obtain a warrant. *See Zap v. United States*, (1946) 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477. There was no error in the overruling of the defendant's objection to the introduction of evidence obtained from the search of the defendant's automobile.

## III.

The defendant was convicted of murder, Ind. Code § 35–42–1–1(1) (Burns 1979): "A person who: (1) Knowingly or intentionally kills another human being . . . commits murder, a felony." The penalty for the crime is fixed by statute, Ind. Code § 35–50–2–3 (Burns 1979):

"(a) A person who commits murder shall be imprisoned for a fixed term of forty [40] years, with not more than twenty [20] years added for aggravating circumstances or not more than ten [10] years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars [$10,000]. . . ."

The defendant was sentenced to a determinate term of sixty years' imprisonment.

He now argues that the court erred in the sentence imposed.

Certain criteria for sentencing are provided the trial judge by statute, West's Ann. Ind. Code § 35–4.1–4–7 (1978):

"(a) In determining what sentence to impose for a crime, the court *shall* consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person.

"(b) The court *may* consider these factors as mitigating circumstances or as favoring suspending the sentence and imposing probation:

"(1) The crime neither caused nor threatened serious harm to persons or property, or the person did not contemplate that it would do so.

"(2) The crime was the result of circumstances unlikely to recur.

"(3) The victim of the crime induced or facilitated the offense.

"(4) There are substantial grounds tending to excuse or justify the crime, though failing to establish a defense.

"(5) The person acted under strong provocation.

"(6) The person has no history of delinquency or criminal activity, or he has led a law-abiding life for a substantial period before commission of the crime.

"(7) The person is likely to respond affirmatively to probation or short-term imprisonment.

"(8) The character and attitudes of the person indicate that he is unlikely to commit another crime.

"(9) The person has made or will make restitution to the victim of his crime for the injury, damage, or loss sustained.

"(10) Imprisonment of the person will result in undue hardship to himself or his dependents.

"(c) The court *may* consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

"(1) The person has recently violated the conditions of any probation, parole, or pardon granted him.

(2) The person has a history of criminal activity.

"(3) The person is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility.

"(4) Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime.

"(5) The victim of the crime was sixty-five (65) years of age or older.

"(6) The victim of the crime was mentally or physically infirm.

"(d) The criteria listed in subsections (b) and (c) of this section do not limit the matters that the court may consider in determining the sentence." [Our emphasis.]

The law also provides that no defendant convicted of a felony shall be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court. West's Ann. Ind. Code § 35–4.1–4–9 (1978).

■ Although the trial court has, in the past, had discretion in sentencing a defendant within the limits prescribed within an applicable penal statute, the concept of distinguishable aggravating and mitigating circumstances is new to Indiana law. The basis for the statutory flexibility is related directly to the constitutional provision that "Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense." Ind. Const. Art. 1 § 16.

We note that within the statute providing the criteria for sentencing certain factors *must* be considered by the sentencing court while other factors *may* be considered. The distinction is important. When a court imposes the basic sentence embodied within a particular criminal statute, this Court will presume that the mandatory considerations were made by the judge, even if the record lacks specificity in enumerating those considerations. *See*

West's Ann. Ind. Code § 35–4.1–4–3(3) (1978). However, when a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The scope of review for sentences is now defined within our Rules for the Appellate Review of Sentences: "2(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender."

■ Since the Rules for the Appellate Review of Sentences are the only rules pertaining to our review of sentences that have been adopted by this Court since the Constitutional Amendment of 1970, (which grants review of sentencing), these rules apply to all sentences imposed.

A sentencing court must utilize a presentence report in its determination. West's Ann. Ind. Code § 35–4.1–4–9 (1978). The contents of the presentence report must be disclosed to the convicted person. West's Ann. Ind. Code § 35–4.1–4–13 (1978). The convicted person should be afforded a fair opportunity to controvert the material contained within the presentence report. *Id.* Finally, the law provides that the convicted person may file, at any time prior to sentencing, a written memorandum setting forth any information he deems pertinent to the question of sentence. West's Ann. Ind. Code § 35–4.1–4–12 (1978).

■ The defendant is correct in his assertion that the Indiana Code does not allocate any burdens respecting the production of evidence or persuasion in the sentencing area of the criminal process. Generally, parties are concerned with demonstrating or refuting the accuracy of the information contained in the presentence report. The report itself is a theoretically neutral document of the probation department, and the assertions in the report will be accepted as

true unless challenged by the defendant.[2] Therefore, the initial burden of production would rest with the defendant in disputing the information contained within the report. Whether the defendant would be required to produce evidence or merely deny the information would depend upon whether the information consists of supported or naked allegations.[3] However, it seems clear that it is the defendant's responsibility to bring to the trial court's attention any disputed facts regarding sentencing criteria.

West's Ann. Ind. Code § 35–4.1–4–3 (1978) provides for a sentencing hearing in felony cases:

"Before sentencing a person for a felony the court must conduct a hearing to consider the facts and circumstances relevant to sentencing. The person is entitled to subpoena and call witnesses and otherwise to present information in his own behalf. The court shall make a record of the hearing, including:

"(1)  a transcript of the hearing;

"(2)  a copy of the presentence report; and

"(3)  if the court finds aggravating circumstances or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes." [4]

■ In this case, the trial court gave both the state and the defendant an opportunity to present evidence at the sentencing hearing; neither side did. Therefore, the trial court presumably relied only upon the facts elicited at trial and the presentence report when it selected a term of sixty years' imprisonment for the defendant.

■ The record of the sentencing hearing includes the following findings of the court:

"[T]here are no mitigating circumstances shown which would be sufficient to order a reduced sentence herein.

"The Court further finds that there are aggravating circumstances which are sufficient to order increased sentence, which such circumstances are as follows:

"1.  Defendant has a long history of deviant sexual behavior,

"2.  the heinious [sic] and aggravated nature of the offense committed in this cause,

"3.  the defendant's conduct and behavior following commission of the offense in failing to seek medical attention for the victim and in attempted concealment of the victim's body and in attempted destruction and obliteration of evidence,

"4.  that imposition of any reduced sentence would serve to depreciate the seriousness of the crime of which defendant has been convicted."

The conclusions of the sentencing court are supported by (1) information contained within the presentence report, (2) evidence presented at the suppression hearing regarding the defendant's prior contacts with the law, and (3) the defendant's confession. Of course, the court considered the nature and circumstances of the crime committed and the character of the defendant. The defendant agrees that the murder was heinous and aggravating, but he asserts that the record did not disclose that the murder was any more heinous or aggravating than any murder is. We disagree. The victim was offered a ride by the defendant. When she was in the car, the defendant suggested sex, but the victim declined. The defendant then stabbed her in the chest. She begged him to take her to a hospital because she had three children. He drove farther and then felt her and determined that she was dead. He parked the car and undressed the body and sexually fondled it. He then placed the body in a sleeping bag, disposing of it the following day. He also destroyed evidence of the crime. Viewing

---

2.  Note, *A Hidden Issue of Sentencing: Burdens of Proof for Disputed Allegations in Presentence Reports,* 66 Geo.L.J. 1515, 1529 (1978).

3.  *Id.*

4.  The quoted statute incorporates an amendment (effective July 1, 1978) that permitted the court to omit giving the reasons for a sentence when the presumptive sentence is selected. At the time Gardner was sentenced, the court was required to state its reasons for selecting *any* sentence.

the nature of the crime in conjunction with information that the defendant had previously been convicted of placing obscene phone calls and had been interviewed in the past regarding incidents involving very young girls and an eighty-year-old woman, we conclude that the act of the trial court in sentencing the defendant to sixty years' imprisonment was not manifestly unreasonable.

## IV.

Finally, the defendant asserts that statements made by him to the probation officer were utilized by the trial court in violation of his constitutional right against self-incrimination. He particularly objects to the twenty-year additional sentence because he believes that the trial judge based it upon facts which the defendant himself provided within the presentence report. He argues that he was not told, before his interview with the probation officer, that what he said could affect his sentence.

The statements that the defendant terms prejudicial related to accounts of earlier abnormal sexual behavior. He contends that the court's finding of "long history of deviant sexual behavior" can only be supported if one accepts the constitutionally impermissible self-incriminating presentence report. He also argues that since he had not been *convicted* of any prior sexual crimes, the imposition of twenty years' additional imprisonment amounted to conviction and sentencing upon separate crimes for which he had never been formally charged.

We emphasize that the record provides many bases upon which a sentence for aggravating circumstances could have been grounded. Additionally, as we have discussed *supra,* testimony was admitted during the trial regarding the defendant's sexual proclivities. However, the crucial factor in our determination is that the defendant *was* informed, even before his trial

started, that he had the right to remain silent and that anything he said could be used against him. There is no showing of force or coercion during the interview with the probation officer. In fact, there is evidence that the defendant was being advised by counsel regarding the content of the presentence interview with the probation department.[5] The defendant agrees that a complete and accurate description of the defendant, including his activities, personality traits, interests, and past record, is obviously invaluable to a trial judge when pronouncing sentence.

■■■ Ind. Code § 35–4.1–4–10 (Burns 1975) defines the scope of the presentence investigation and report:

"The presentence investigation consists of the gathering of information with respect to the circumstances attending the commission of the offense, the convicted person's history of delinquency or criminality, social history, employment history, family situation, economic status, education and personal habits. Such investigation may also include any other matter which the probation officer conducting the investigation deems relevant to the question of sentence, and must include:

"(1) any matters the court directs to be included; . . . ."

The presumption of innocence does not extend to the sentencing proceedings. *See* Note, *A Hidden Issue of Sentencing: Burdens of Proof for Disputed Allegations in Presentence Reports,* 66 Geo.L.Rev. 1515, 1541–1542, footnote 147:

"The consideration of prior criminal activity by the sentencing judge has fostered litigation on the subject of extending the presumption of innocence to sentencing proceedings. The value of criminal activity in shedding light on a defendant's character has led courts to hold that a sentencing judge can consider prior convictions, prior criminal activity not result-

---

5. Excerpts from the presentence report show: "The Defendant started to use the State Police report but his attorney advised him not to talk about this offense . . . . The Defendant's attitude was very good and he talked very freely. However, it was made very clear to the Defendant that we would not discuss anything pertaining to this case, as this was his attorney's request."

ing in charges or convictions, and even prior acquittals. *See, e. g., United States v. Jones,* 533 F.2d 1387, 1394 (6th Cir. 1976) (past convictions for selling whiskey properly considered by trial judge in imposing sentence for possession of firearms); *United States v. Sweig,* 454 F.2d 181, 184 (2d Cir. 1972) (sentence upheld despite reliance in part on evidence admitted on counts for which defendant acquitted); *United States v. Doyle,* 348 F.2d 715, 721 (2d Cir.) (use of unproved criminal activity in sentencing does not violate presumption of innocence; judge properly considered counts in unprosecuted indictment), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965)."

However, a defendant *is* entitled to be sentenced only on the basis of accurate information. A sentence based on materially untrue assumptions violates due process. *Townsend v. Burke,* (1948) 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690. Our laws provide safeguards to ensure the defendant's opportunity to question any data contained in the presentence report. We note that the defendant herein does not contest the validity of the facts but rather focuses upon the source of the facts. We are unpersuaded that information gleaned from the defendant himself at a presentence investigation review should be rejected as unconstitutional per se. The United States Supreme Court has reasoned that information from out-of-court sources comports with the goal of individualized treatment by allowing a judge to tailor the sentence to the individual. *Williams v. New York,* (1949) 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. We conclude that the defendant's right against self-incrimination was not violated through the use, at sentencing, of information which the defendant volunteered.

For all of the foregoing reasons, there was no trial court error, and the judgment and sentence of the trial court should be affirmed.

Judgment and sentence affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.