# FOR PUBLICATION


FILED

Feb 05 2013, 9:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KELLY A. MIKLOS**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEIYUN L. MAYS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1205-CR-287 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-0908-FA-31

**February 5, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Sixteen-year-old D.K. was asleep in her bed when she felt someone on top of her, beating and stabbing her on her head and upper body. As the attack progressed, D.K. was

struck several times with a tire iron, was stabbed several times, lost consciousness three times, and urinated on herself. At some point, D.K. recognized that her attacker was Appellant-Defendant Keiyun Mays, known to her because he had dated her sister. D.K. eventually escaped from Mays and obtained assistance. A jury found Mays guilty of Class B felony criminal confinement, and the trial court sentenced him to fifteen years of incarceration and found him to be a sexually violent predator ("SVP"). Mays contends that the trial court abused its discretion in sentencing him, that the State produced insufficient evidence to sustain an SVP finding, and that the SVP interview process violated his right against self-incrimination such as to constitute fundamental error. Concluding that all of Mays's arguments are without merit, we affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 2:00 to 3:00 a.m. on August 5, 2009, sixteen-year-old D.K. was awakened by someone stabbing and beating her. D.K. began kicking, screaming, and yelling, "Take anything, take whatever you want[,]" which did not cause the attack to cease. Tr. p. 78. D.K.'s attacker pulled D.K. off of her bed by her legs and hit her in the face three times, causing her to lose consciousness. D.K. felt herself urinate and woke up after approximately one minute. D.K.'s attacker hit her with a tire iron, causing her to pass out again.

When D.K. regained consciousness a second time, she was on her back and her attacker had her pinned her down. D.K. recognized her assailant as Mays. Mays had previously dated D.K.'s sister, and D.K. was also friends with Mays's sister. D.K. asked Mays to allow her to turn around, and, when he allowed her to, she grabbed the tire iron and

2

hit Mays in the face with it.  D.K. ran out of her room, closed the door, and struggled to escape through the front door.  Although Mays caught up to D.K. and ripped her shirt, D.K. managed to escape to the nearby home of a friend, who contacted the authorities.  D.K. then lost consciousness a third time.

On August 6, 2009, the State charged Mays with Class A felony burglary, two counts of Class B felony criminal confinement, Class B felony rape, Class C felony criminal confinement, Class C felony battery, and Class D felony sexual battery.  On March 31, 2011, a jury found Mays guilty of two counts of Class B felony criminal confinement, Class C felony criminal confinement, and Class C felony battery.  On May 4, 2011, the State petitioned to have Mays's possible status as an SVP evaluated.  On April 30, 2012, the trial court found Mays to be an SVP, entered judgment on one count of Class B felony criminal confinement, and sentenced him to fifteen years of incarceration.  The trial court found Mays's youth and drug and alcohol abuse to be mitigating circumstances.  The trial court found the nature and circumstances of the crime and that Mays had violated the terms of his community corrections placement to be aggravating circumstances.

## DISCUSSION AND DECISION

### I.  Whether the Trial Court Abused its Discretion in Sentencing Mays

Under our current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2008).  We review the sentence for an abuse of discretion.  *Id*.  An abuse of

3

discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence–including a finding of aggravating and mitigating factors if any–but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, under the new statutory scheme, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Id.*

Mays contends that the trial court abused its discretion in considering charges for which he was tried but found not guilty. Specifically, Mays contends that the record indicates that the trial court considered elements of the Class A felony burglary and Class B felony rape charges, of which Mays was acquitted. To support this argument, Mays points only to the trial court's sentencing order, in which the court indicates erroneously that the jury had found him guilty of rape. Our review of the record, however, shows that the indication that Mays had been found guilty of rape is clearly nothing more than a scrivener's error. The trial court's order issued at the conclusion of trial clearly indicates that the jury

4

had found Mays not guilty of rape. The trial court's abstract of judgment, issued four days before the sentencing order, also indicates that the jury had acquitted Mays of rape. At Mays's sentencing hearing, neither the State, nor Mays, nor the trial court even so much as mentioned the fact that Mays had been charged with rape. In summary, there is no indication whatsoever that the trial court was actually confused regarding Mays's acquittal of the rape charge or that it considered the charge in sentencing Mays. Mays has failed to establish that the trial court abused its discretion in sentencing him.

## II. Whether the State Produced Sufficient Evidence to Sustain the Trial Court's SVP Finding

Indiana Code section 35-38-1-7.5, which governs findings regarding sexually violent predators, provides, in part, that "[a]s used in this section, 'sexually violent predator' means a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense[.]" In this case, the State sought to have Mays found an SVP pursuant to subsection (e), which provides, in part, that

> [t]he prosecuting attorney may request the court to conduct a hearing to determine whether the person … is a sexually violent predator…. If the court grants the motion, the court shall appoint two (2) psychologists or psychiatrists who have expertise in criminal behavioral disorders to evaluate the person and testify at the hearing. After conducting the hearing and considering the testimony of the two (2) psychologists or psychiatrists, the court shall determine whether the person is a sexually violent predator…. A hearing conducted under this subsection may be combined with the person's sentencing hearing.

Mays contends that the State produced insufficient evidence to sustain the trial court's SVP finding.

When a defendant makes a sufficiency-of-the-evidence challenge to a

5

trial court's SVP finding, our inquiry is whether there was substantial evidence of probative value to support the trial court's finding that the defendant suffers from a mental abnormality or personality disorder that makes him or her likely to repeatedly commit the enumerated sex or violent offenses. [*Scott v. State*, 895 N.E.2d 369, 375-75 (Ind. Ct. App. 2008)]. We will neither reweigh the evidence nor judge the credibility of the witnesses. *Id*. at 374-75. We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Id*.

*Williams v. State*, 895 N.E.2d 377, 385-86 (Ind. Ct. App. 2008).

Three psychiatrists examined Mays: Drs. R. Bhawani Prasad and J.J. Rodos[1] by court appointment and Dr. George Parker as an expert witness for Mays. Dr. Prasad opined that Mays suffered from "antisocial personality … also called psychopathic personality [disorder]" and that "there was a high likelihood that [Mays] might [reoffend in a sexual manner] if the circumstances presented themselves." Tr. pp. 494, 495. Dr. Rodos opined that Mays had "an antisocial personality disorder" characterized by "the inability … to feel guilty about what you do, to put consequences on what you do, and control what you do" and concluded that Mays was a SVP. Tr. pp. 513-14. It is worth noting that Mays told Dr. Prasad that he had intended to rape D.K. as revenge for previously refusing to have sex with him and admitted to Dr. Rodos that the motive for his crimes against D.K. was sexual. Although Dr. Parker opined that Mays did not meet the definition of an SVP, the trial court

---

[1] Mays attacks the opinions of Drs. Prasad and Rodos by arguing that the State failed to show that they had the required expertise in criminal matters to testify as to SVP status. Mays, however, failed to object to this alleged lack of qualification at the sentencing hearing and has therefore waived the issue for appellate review. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted). "The rule requires parties to voice objections in time so that harmful error may be avoided or corrected and a fair and proper verdict will be secured." *Id*.

6

was under no obligation to credit his opinion. Moreover, "we have previously held that unanimity between the doctors is not required for an SVP finding." *Williams*, 895 N.E.2d at 386 (citing *Westbrook v. State*, 770 N.E.2d 868, 871 (Ind. Ct. App. 2002)). Mays's argument amounts to nothing more than an invitation to reweigh the evidence, which we will not do.

### III. Whether the SVP Process Generated Fundamental Error

Mays concedes that he did not object below to the use of his statements during the SVP evaluation process. Mays contends, however, that such a use of his statements constitutes fundamental error. "Appellate courts may, on rare occasions, resort to the fundamental error exception to address on direct appeal an otherwise procedurally defaulted claim." *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

> But fundamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible.

*Id*.

Mays has failed to establish any error in this regard, much less fundamental error. In a case sufficiently analogous so as to control here, the Indiana Supreme Court rejected the defendant's argument that his right against self-incrimination was violated when the trial court enhanced his sentence based on statements he made during the presentence investigation. *See Gardner v. State*, 270 Ind. 627, 637, 388 N.E.2d 513, 519 (1979). In rejecting Gardner's argument, the Indiana Supreme Court concluded that "the crucial factor in our determination is that the defendant was informed, even before his trial started, that he

had the right to remain silent and that anything he said could be used against him." *Id*. The Court also observed that "[t]here is no showing of force or coercion during the interview with the probation officer." *Id*.

As in *Gardner*, the SVP procedure here was a post-conviction evaluation that did not produce any admissions that contributed to any criminal convictions, only, in this case, to the determination of Mays's SVP status. Moreover, the "crucial factor" identified by the Gardner Court is also present here, as Mays was informed prior to trial that he had the right to remain silent and that anything he said he could be used against him. Finally, there is no indication of any coercion or force exerted by Drs. Prasad and Rodos (or any other person) during their interviews with Mays. Mays has failed to establish that the process used to determine his SVP status constituted fundamental error.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.

8